on behalf of Mr. Reed. I'd like to save two minutes for my rebuttal. Your Honors, I think the single most unfair thing that happened to Mr. Reed in this trial was the prosecutor's mischaracterization of a tape recording that was excluded from evidence on her objection. Counsel, I was disturbed about the tape recording, too. It seemed odd to have people arguing to the jury about the tape recording when it was not in evidence. However, it looked to me as though the defense started it. And I wonder if they opened the door. Your Honor, I think that the prosecution is the one that first brought this conversation about which there had only been Ms. Hooper's in-court testimony prior to that. In her – in the first part of her closing argument, she starts to tell the jury about this conversation. And we know that Hooper – the only telephone call she specifically gave testimony about was the February 25th call, which had been tape recorded. And so when the prosecutor in her closing argument begins to talk about a specific conversation in which the prosecutor says Mr. Reed told Ms. Hooper to lie for him about the source of the PEP dollars, that she has to be talking about that conversation. And so she tells the jury, you know, she's trying to bolster Hooper's credibility at this time, and she's saying Hooper didn't want to get into this. He called her from the jail – a week before trial, he called her from the jail and told her to lie. Now, we know that both of them were, in fact, in custody a week before trial. So that couldn't have been true. And that, in fact, if you read the transcript of the actual conversation, he was telling her just the opposite in that conversation. So I think it's the prosecution that began talking beyond the evidence presented at trial in her closing argument. I believe what defense counsel then did in his closing – Do you have a cite to the record before us where the prosecution first mentioned the recorded statement? Where she first actually mentions the tape recorded? That's your argument, yes. This would be in her closing – Just give me a page and a line. That's all I'm looking for on the ER. Okay. Reporter's transcript, pages 283 to 284. Thank you. In there, she's saying there's nothing admissible or relevant on that tape. That's why you didn't hear it, she's telling the jury. And then she says, If there was something on that tape that impeached something that Hooper said, I guarantee you, you would have heard it. What was the prior reference, then, when she was talking to that tape? In her – in the first part of her closing argument, she talks about a telephone conversation that she says Hooper gave testimony about. Now, we know that the only particular conversation Hooper gave testimony about was the February 25th conversation. And I believe that the State conceives that they characterize it as misspeaking. I characterize it as deliberately taking advantage of the fact that the jury hadn't heard the tape recording. But I'm trying to get at the first reference to the tape. You say it's on 283 and 284, that tape. Well, now, just referring to that tape suggests that somebody else talked about the tape before that. That's true. I was – I thought I was asked about the prosecutor's first use of the tape. The defense attorney did bring out in his cross-examinations of Miss Hooper and Detective Bellchamber that a tape had probably been made. Okay. So the first reference to the tape was really by the defense. He brought that out in his testimony. Right. And he reminded the jury, you've heard different testimony about this conversation. You've never heard the tape. So I believe that he did – he referred to the tape, that there was a tape they hadn't heard, but he didn't describe the contents of the tape at all. And that other reference you gave us about that tape was from the prosecutor's closing statement. Correct. 283 to 284, where she's purporting to quote from the tape itself, which the defense lawyer had not heard. As I understood it, what she was doing was responding to the defense argument that something has been hidden from you, this tape. And she's saying there's nothing on it that's relevant. Right. Well – But it doesn't look like she quotes what's on it. Does she? She – yes, she does. She goes on to say – she says it was kept out on relevance and hearsay grounds, which it wasn't actually kept out on relevance grounds. And then she says, he said, tell them where you got the PEP dollars. And she said, you know where I got them. I got them from you. So she's purporting to quote to the jury. I thought she was quoting there what happened in the testimony. Well, then she says, and if that wasn't on the tape, you would have heard it because it would have been relevant. And then the judge comes along later when the jury says, why wasn't – could she have introduced the tape that she quoted from in her closing into evidence? The judge says, yes, she could have if it had been different from what the witness said. Sure. If it – if it – The judge is actually saying, yes, she's telling you – the prosecutor has told you the truth. What was said in the testimony was exactly what was on the tape. And this is what was on the tape. Whereas, of course, if we had – the transcript of the tape, he's telling – he starts by saying, don't tell them some bullshit. Tell them – in fact, tell them the truth. I don't have anything to do with it. You don't have anything to do with them. Tell them the truth about where you got the PEP dollars. So in this way, they've led the jury to believe that this tape is an instance of Reed telling Hooper to lie when, in fact, just the opposite is true. So that – given especially that the trial judge came along and – let's say you're right on that. Why would it matter? It seems like when they come in and spend all those PEP dollars, game over. There's no question that the two of them came into the second Pep's Boys store and spent PEP dollars. But the source of those PEP dollars really – it was only Hooper who testified that Reed gave them to her. Hooper herself could have gotten them from another source and went with her boyfriend, Mr. Reed. That's a lot of PEP dollars. How do you get that many PEP dollars? Well, I think that clearly one could infer that clearly those were hot PEP dollars. But who first got them? Were they just bought by this couple or one member of this couple from someone else? We don't know. And what he's convicted of is actually committing the robbery. He gets an enhancement because a principal used a firearm in the robbery. So even if – The problem with the PEP dollars is it's kind of like robbing a bank and then going in and making a deposit with the bills where they have the serial numbers recorded. You know, as I said, I think that a strong argument could have been made and inference could have been drawn that those were stolen PEP dollars. Counsel, you're down to two minutes. You may want to reserve. I'd like to do that if there's nothing else. You may do so. Thank you. Good morning, Your Honors. Pat Whalen. Good afternoon. Good afternoon. Thank you, Your Honor. Pat Whalen for the ward in this case. I'd like to point out that quite – I disagree with my colleague on that tape. As far as we know, Mr. Reed never said tell the truth. All we know from the tape and the record is a representation of what's on that tape by defense counsel when he was making his initial motion to play a portion of the tape. Look, you have a choice whenever you object to evidence coming in. You can object and maybe succeed and then have your adversary point to the evidence that isn't there, or you can let it in and deal with it. I generally would agree with you, Your Honor, except in this case what defense counsel did at RT-278 before the reference given by my colleague and the prosecutor, at RT-278 in defense closing, defense counsel says, well, you've heard about this tape, but we don't have that tape. We don't have that tape, and that's too bad. And the prosecutor, I think, heard those words, we don't have that tape, and felt like the defense counsel was insinuating that there had been some withholding of evidence when, in fact, there was not. Both parties had the tape, and the prosecutor got up and said that. No, they have the tape. There's no doubt about where the tape is or who has it. The point is there's nothing admissible on the tape. That's why you didn't hear it. And then the prosecutor goes on to explain about the only evidence that there was admitted at this trial about the tape, and that was Ms. Hooper's testimony.  She told you what was on that tape. If you look at RT, I think it's about page 125, that's Ms. Hooper's testimony. She's saying, yeah, there's this call that I taped or that somehow got taped on February 25th, and on that tape he said, tell them where you got those PEP dollars, and I told him I got them from you and I hung up. And that's exactly what the prosecutor recounts in closing argument at RT-283, 284. So the prosecutor is not trying to suggest to the jury, here's my transcript of the tape. The prosecutor is saying, here's the only evidence that we have about what's on the tape, and it's Ms. Hooper's testimony. And so it was purely responsive, and as I said, I don't think the prosecutor was quoting it. With regard to the court's instruction or response to the jury's question, it's important to remember there's no claim in this proceeding about any kind of question. Here's why I asked that first question. It seems to me that once the prosecutor keeps the tape out of evidence, and there were good grounds for keeping it out, it's a jail phone call, he knew he was being recorded, he's just sort of making a record, but once the prosecutor succeeds in keeping it out, I don't get how they can tell the jury what's on it. Well, two responses again, Your Honor. One, the prosecutor's argument was responsive to the defense counsel mentioning the tape that had already been excluded. And two, I don't know. You're saying it's an invited error? What? Invited error? I'd say that the prosecutor was responding to the defense characterization of the tape as somehow not being given to the defense. Remember, the defense counsel... Why does that make it okay to tell the jury what's on the tape? And that goes to my second response. The prosecutor didn't tell the jury what was on the tape. What the prosecutor said is, here's what we know about what is on the tape. Because we don't have the tape. Everybody agrees nobody heard the tape. The only evidence we have is Ms. Hooper. And Ms. Hooper says, here's what's on the tape. He tells me to tell him where you got the Pep Boy dollars, and I said to him, I got them from you, click, I hung up. And that's what the prosecutor says. So it's perfectly permissible for the prosecutor to argue about the evidence that is properly admitted. And the only evidence about what's on the tape that was properly admitted is her testimony. Wait a minute. It sounds as though if the lawyer's representations about what was on the tape are true, that she lied about what was on the tape. I'm not sure I follow, Your Honor. Well, at one point, before he was making a record to protect himself, he probably told her to lie. And at another point, when he called from the jail and was trying to improve his case, he probably told her to tell the truth, just as the defense attorney said, without contradiction to the judge when they were discussing whether to admit it. And the implication of her testimony is that when he called her and it was taped, he told her to lie. But that's false testimony. Have I got this right? It's easy for me to get mixed up. I think you do have it incorrect, Your Honor, and here's why. I think your assumption that he told the truth on the tape-recording call of February 25th is entirely- No. Not what I said. I said he told her to tell the truth in the tape-recorded call. That's different from him telling the truth. I misspoke. Thank you, Your Honor. But your supposition or speculation that he told her to tell the truth is entirely unsupported by the evidence. What we have- Well, we don't have evidence of what's on the tape, right? No, but we do have defense counsel's representation to the trial court of what's on the tape. And then minutes later, his concession to the trial court that, yeah, there's nothing on the tape that is inconsistent with Ms. Hooper's testimony, wherein her testimony contained numerous instances where she said he told me to lie. Now, if there's anything on the tape where he says, no, tell the truth, that would clearly be inconsistent. And yet we know that defense counsel conceded that nothing like that existed. So to speculate that there's something on the tape where he says tell the truth is entirely unwarranted. What we do know in terms of- Did the witness say that on the call from the jail? No. She said there were a number of contacts between Ms. herself and Petitioner, and that he told her to lie on various occasions. But when you get to RT-133, 134, she clarifies, no, no, on the February 25th call, that was not one of the times he told me to lie. He said on that call, just tell him where you got him, and I said I got him from you. So she never represents that one of the times he told her to lie was on the February 25th call. And that was explored in cross at some length until she finally- she wasn't the most articulate witness, but she did get out that, no, that's not one of those times. And so there's nothing in the record to support the idea that he says anything close to the verbiage, I want you to tell them the truth. What he says is tell them where you got them. A clear inference from that would be like I previously told you to tell him you bought him off the street. So to the extent we're going to draw inferences from what was said, that one would be the more rational inference to draw. I think the last thing I would ask the Court to do with respect to the first argument, the insufficiency of the evidence, is just to clarify from our brief, we are advocating that the AEDPA standard applies to the Jackson insufficiency claim just like it applies to any other claim of constitutional error. And to the extent that's still an open question in this Court, I would urge this Court to put that question to rest. There's no difference between that claim and any other claim of constitutional error. Thank you, Counsel. Thank you. Ms. Wiggin, you have some reserved time. You concede the Blakely issues are forfeited? Pardon me, Your Honor? You concede the Blakely issues are forfeited because they're not certified? I concede they're not certified. Thank you. I'm asking that it be remanded, if we lose on the other claims, that it be remanded so that the claim can be added in district court and it ever comes back to the Ninth Circuit certified at that point. Your Honor, I just want to respond very briefly to my opposing counsel. He says we have no information about what's on the tape except what defense counsel says was on the tape, as though that's not evidence of what was on the tape. And the prosecutor never said on the record that defense counsel was misquoting the tape when they had the evidentiary hearing about it. So I think that we can trust that what defense counsel read out loud in the evidentiary hearing was what was on the tape. And there could certainly be a hearing on that in Federal court if there had to be. And as far as what the defense lawyer raised in his closing argument, I don't agree that he made an implication that the tape had been improperly destroyed. But if he did, then the prosecutor said there's no evidence it was improperly destroyed. That's quite a different thing from telling the jury what's on the tape. And the last point I want to make is that we did have Ms. Hooper's testimony about the tape, but Ms. Hooper was a witness who was incredible on many grounds. The jury may not have believed her. There were several reasons. But when the prosecutor comes in and says in closing argument, here's what was on the tape, the prosecutor is vouching for Ms. Hooper's testimony and saying, I represent the government. I – you can trust me, and I'm telling you what's on the tape. And then the judge actually ratified that when he said, yes, the prosecutor was right about her characterization of the tape and why it was kept out. Thank you, counsel. We understand your position. Thank you. The case just argued will be submitted for decision. And we will now hear argument in United States v. Veal.
judges: Beezer, O'scannlain, Kleinfeld